Argued October 5; affirmed November 2, 1943

HOWARD *v.* ALBRECHT ET AL.

(142 P. (2d) 684)

Before BAILEY, Chief Justice, and ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*Ralph R. Bailey,* of Portland (Maguire, Shields, Morrison & Biggs and William H. Morrison, all of Portland, on the brief) for appellant.

*Gunther F. Krause,* of Portland, for respondent.

KELLY, J. This is a suit to require the transfer of twenty-four shares of capital stock of Shipping

News, a corporation, by defendant Albrecht to plaintiff; for a decree declaring that defendant Albrecht has no interest in two shares of said capital stock now held in escrow by defendant Graham and to enjoin defendant Albrecht from transferring or attempting to transfer, mortgage, pledge or otherwise encumber said shares of capital stock. From a decree in favor of defendant Albrecht, plaintiff appeals.

In December of 1920, a partnership consisting of W. L. Reaveau and N. Murphy published the first issue of a marine publication under the name of "Portland Daily Shipping News". On January 2, 1921, defendant Albrecht entered their employ. On the last day of January, 1921, Mr. Murphy transferred his interest in the enterprise to plaintiff, A. W. Howard, for $500.

On February 9, 1921, a corporation was formed to succeed the partnership of Reaveau and plaintiff. Twenty-four shares of its capital stock was issued to Reaveau and twenty-four shares to plaintiff. Its remaining two shares were issued to Miss Evelyn White, who had no other connection with the business.

In April, 1922, Mr. Reaveau withdrew from the business and transferred twenty-two shares of stock to plaintiff and his remaining two shares were transferred to defendant Albrecht. On January 22, 1923, defendant Albrecht received a certificate for the two shares just mentioned. On February 7, 1936, plaintiff transferred twenty-two shares of said stock to defendant Albrecht. On July 1, 1937, the name of the corporation was changed to "Shipping News"; and a certificate for twenty-four shares was issued to plaintiff, twenty-four shares were issued to defendant Albrecht and two shares to Walter Lofquist.

On the 28th day of June, 1937, the two shares issued to Walter Lofquist were placed in escrow in the possession and custody of defendant, S. J. Graham, impleaded herein as S. Graham.

In this suit plaintiff sought to require defendant Albrecht to transfer to plaintiff the twenty-four shares issued to Albrecht as above stated. Plaintiff also sought a decree declaring that defendant Albrecht has no interest in the two shares placed in escrow as above stated.

As a basis for the relief so sought by plaintiff, it is alleged in plaintiff's complaint:

"That on or about the 18th day of January, 1923, plaintiff purchased all of the capital stock of said Portland Shipping News and caused said stock to be transferred to him with the exception of certain qualifying shares issued to E. White and A. C. Albrecht, and stock ownership after said purchase by plaintiff was shown on the books of the company as follows:

| Name of Stockholder | Certificate No. | No. of Shares. |
|---|---|---|
| E. White | 2 | 2 |
| A. W. Howard | 3 | 24 |
| A. C. Albrecht | 4 | 2 |
| A. W. Howard | 5 | 22 |

That E. White and A. C. Albrecht paid nothing for the said shares issued to them, holding said shares solely as qualifying shares."

"That thereafter and in or about the year 1930, plaintiff entered into a contract with defendant, A. C. Albrecht, hereinafter simply referred to as 'defendant', wherein and whereby plaintiff agreed to devise to said defendant all of the stock in said corporation on condition that upon the death of plaintiff, said defendant would cause the corporation to enter into a contract, to which contract said defendant should also be a party, with the executors of plaintiff's estate, obligating said corporation and

said defendant to pay to plaintiff's fiancee, Josephine G. Vanduyn of Portland, Oregon, the sum of $200 per month during her lifetime, said contract to be drawn so as to be binding upon the heirs and assigns of said A. C. Albrecht and to become a charge against said stock, and at the time said stock should be transferred upon the books of the corporation by the executors of plaintiff and new stock issued therefor, there should be endorsed upon said books and any stock certificate or certificates the following words: 'This stock is subject to and chargeable with a legacy in the sum of $200.00 per month, payable to Josephine G. Vanduyn during her lifetime from the gross income of said corporation.' That for valuable consideration, including said agreement and promise on the part of plaintiff, said defendant agreed and promised to execute and perform the contract above set out."

Execution and the keeping in full force by plaintiff of his last will and testament, devising all his stock in said corporation to defendant under the terms and conditions and in trust for the uses aforesaid, are also alleged in plaintiff's complaint.

It is also shown by the complaint that on or about the 19th day of May, 1938, plaintiff and Josephine G. Vanduyn were married.

It is also alleged that defendant, Albrecht, often represented to plaintiff that he, Albrecht, would be better able to carry on the business and carry out the contract for the support of Josephine G. Vanduyn if he were assured of the control of the corporation in some way so that no third person or persons by any possible future claim against plaintiff could ever enforce the same against plaintiff's stock prior to plaintiff's death and thus disrupt the management of the corporation and take away the income for plaintiff's widow.

Paragraph VII of plaintiff's complaint is as follows:

## "VII

That on or about the 7th day of February, 1936, defendant made similar representations to plaintiff and requested plaintiff to make to defendant an advancement of said legacy and to transfer to him said 24 shares of stock of said corporation and further promised and agreed with plaintiff that in consideration of said present transfer that he would, upon the death of plaintiff, pay or cause said corporation to pay to said Josephine G. Vanduyn Howard the sum of $200 per month during her lifetime from the gross income of said corporation. That pursuant to said agreement, plaintiff caused said certificate number 5 for 22 shares of stock in said corporation to be transferred to defendant and certificate number 9 to be issued evidencing said transfer to defendant of said stock, and that the sole consideration for said transfer was the agreement and promise of defendant aforesaid. That plaintiff at said time and on like terms and conditions and for like purposes made an advancement to defendant of the said 2 shares of stock, evidenced by certificate number 4, theretofore held by defendant as qualifying shares only."

Paragraph VIII of plaintiff's complaint is as follows:

## "VIII

That thereafter and on or about the day of June, 1937, at the request of defendant, in reliance upon his representations and promises aforesaid and in order to secure to defendant a controlling interest as a stockholder in said corporation upon the death of plaintiff, so that defendant's ability to perform said promise above set forth would be assured, and as a part of said legacy and in aid of the agreement between them, plaintiff caused 2 shares of the capital stock of said corporation, en-

dorsed in blank, to be deposited in escrow with the defendant S. Graham as escrow agent, with instructions to deliver said stock upon the death of plaintiff to defendant A. C. Albrecht.''

It also appears that the two shares deposited in escrow as above stated were the two qualifying shares held by Walter Lofquist and formerly held by E. White.

Defendant's repudiation of his alleged promise to pay said sums of money to Josephine Vanduyn Howard is alleged to have occurred on or about December 9, 1940.

The position taken by defendant Albrecht is that after his employment upon the Shipping News had continued for about two or three years, the business thereof had improved and expanded and it became desirable on the part of plaintiff that Albrecht continue in the service of the corporation as long as plaintiff should live and as an inducement to that end plaintiff agreed to, and in 1926 did, execute his last will and testament bequeathing all of the capital stock in said corporation and also devising some real estate to Albrecht.

According to Mr. Albrecht, at a later time plaintiff proposed to make a change in the provisions of his will and in 1934 submitted to Albrecht a copy of a will wherein the stock of the Shipping News was subjected to a trust arrangement for the provision of Mrs. Vanduyn during her lifetime.

Mr. Albrecht testified that when this proposition was made and a copy of a will conformable thereto was submitted, he, Albrecht, definitely objected to the arrangement.

As to the arrangement resulting in the escrow agreement, Mr. Albrecht testified that plaintiff had become

financially involved and discussions between them occurred concerning Albrecht's interest in the corporation, the insecurity which resulted because of plaintiff's financial misadventure, and the desire of plaintiff to leave an interest in the Shipping News to Mrs. Vanduyn. According to Mr. Albrecht, these discussions resulted in an adjustment whereby Mr. Howard, the plaintiff, retained the twenty-four shares appearing on the books in his name to do with them as he wished. Albrecht was to consider those shares to be plaintiff's and in order to obtain them after plaintiff's death Albrecht would have to purchase them. This release of the twenty-four shares from the effect of plaintiff's promise to bequeath them and all the other shares of stock to Albrecht, was, according to Albrecht, the consideration for the transfer of the twenty-two shares transferred to Albrecht as evidenced by certificate number 9.

It will be seen that a question of fact is thus presented. Upon this issue, plaintiff holds the affirmative. The plaintiff testified in support of his contention and denied that he had executed a will in 1926. Defendant Albrecht testified, as above stated, and as to the existence and provisions of the 1926 will he was corroborated by his wife.

The learned trial judge decided that plaintiff had not sustained the burden of proof and dismissed the case.

The following is a copy of the basis of the trial court's decision as set forth in his opinion rendered on March 25, 1942:

"* * * Plaintiff was the original founder of this business. His initial investment therein was small. He shortly associated defendant with himself and thereafter each contributed substantially to-

wards the development and success of the Portland Shipping News for a period exceeding 20 years and each is responsible in large measure for its expansion and the value of its stock. Each shared comparably in salary and bonus.

In 1930, due to plaintiff's impaired health, defendant became manager of the business and thereafter for a period of ten years plaintiff semiretired, retaining but a casual connection with the Portland Shipping News. In 1937, and activated by an unfortunate business venture of plaintiff, two shares of stock were placed in escrow with Sidney J. Graham (see Exhibit 34). In October, 1941, plaintiff avowedly acting because of defendant's refusal to recognize an obligation to pay Josephine Vanduyn $200 per month, defendant was removed from official connection with the corporation by vote of a majority of the stock.

Up until 1940 each had the greatest confidence in the other. The relationship was apparently much closer than the ordinary business one, genuine friendship and mutual faith existing. For some six years prior to the transfer of the 24 shares to defendant, defendant had assumed by far the major responsibility in the conduct of the business. Plaintiff's health was poor and he was interested in securing the retention of defendant's services. It is quite evident from plaintiff's testimony and his numerous wills that he desired to effect the arrangement he alleges was entered into and to secure an annuity to Josephine G. Vanduyn following his death, to be assumed and paid from the income of the business. The evidence, however, falls short of establishing such mutual understanding. The minds of the parties never met upon this particular commitment. Plaintiff has failed to sustain the burden of proof. The relationship and conduct of the parties, the objectives sought to be attained, and the writings such as they are, all support defendant's position, save and except plaintiff's statements in his wills. It is somewhat significant that whereas

plaintiff's desires were frequently committed to writing by him, no corresponding obligation upon the part of the defendant was anywhere reduced to writing. Surely, if these parties had agreed upon this long range program, a written memorandum would have been made and executed. Plaintiff seeks to destroy the status quo and he must assume the burden of proof. The evidence fails to sustain him.

It is conceded defendant's services for over 20 years were honest, faithful and productive of results, and he was regarded more as a partner in the business than as a paid employe. Under the circumstances the transfer of the stock, under the arrangement defendant pleads, was quite natural and entirely in order. It is of some significance that at the time of defendant's dismissal from the business plaintiff offered him up to $450 a share for his 24 shares of stock conditioned, apparently, upon defendant's agreement not to engage in a competing business. The escrow agreement (Exhibit 34) refers to the stipulation of June 28, 1937, signed by plaintiff, which reads in part:

'Whereas Arthur W. Howard, of Portland, Oregon, is a stockholder in Shipping News, an Oregon corporation, owning and holding 26 shares of the capital stock of the said corporation; and whereas Andreas C. Albrecht, of Portland, Oregon, is a stockholder in Shipping News, an Oregon corporation, owning and holding 24 shares of the capital stock of the said corporation; and whereas it is the intention of the parties hereto that Andreas C. Albrecht shall have a controlling interest as a stockholder in said corporation under the conditions herein set forth * *.'

Here defendant's ownership of 24 shares is expressly recognized. On one occasion, February 21, 1939, plaintiff wrote defendant a letter containing a reference to a talk which 'may have caused you to carry away a feeling of disturbance and apprehension. I have not, as you know, been quite myself

for some time, but whether or not my home affairs become what I had hoped them to be, you may be sure I will never let you down * *' (Exhibit 10.) All written memorials seem to support defendant's position.''

A petition for rehearing was filed and after the testimony had been transcribed the trial judge heard partial reargument thereupon.

On May 26, 1942, the following opinion was rendered by the trial court:

"Since my letter of March 25, 1942 to counsel, the transcript of testimony has been made available to and read by me. A partial reargument followed. I have again carefully considered the case and find no reason to change the views expressed in my letter referred to.

From the beginnings of this business both plaintiff and defendant contributed substantially to its success. · There was comparable participation· in compensation and bonus. There was undoubtedly some understanding that defendant should participate to an extent greater than that of the ordinary salaried employe; that his services were of great value; that plaintiff's health necessitated his partial retirement; and that from 1930 on the major responsibility was assumed and discharged by the defendant. This original agreement, somewhat nebulous, and whatever it might have been, was later modified as contended by defendant, and he received 24 shares outright, followed by escrow of two additional shares. This latter arrangement to some extent was apparently actuated by defendant's insistence on being protected as a modification of the original program and because of the financial difficulties in which plaintiff had become involved. For many reasons plaintiff wished to secure defendant's retention in the business, and this was accomplished in the manner pleaded by defendant and developed in the testimony.

At this time in 1936 when the 24 shares were transferred to the defendant he had put in some 16 years and was practically indispensable to the operation of the business. Plaintiff's health was poor and his numerous wills would suggest apprehension on his part. Thereupon the parties adjusted their affairs by the transfer of the stock and the execution of the escrow.

Counsel will submit decree in accordance with my letter of March 25, 1942."

Plaintiff has favored us with citations to a number of cases and to several sections of Pomeroy's Equity Jurisprudence. These authorities have been given careful consideration. Many of them directly support the principles of law upon which plaintiff relies; but, necessarily, they aid little, if any, in determining the question as to whether plaintiff's or appearing defendant's version of the relationship that existed between the parties is true. The record of the instant case alone affords the answer.

Upon oral argument attention was called to the fact that when the escrow agreement was being considered before its final execution in Mr. Graham's office plaintiff suggested that the provisions of the trust mentioned in plaintiff's will should be incorporated in the escrow agreement. It was urged by plaintiff's attorney on oral argument that Mr. Graham's testimony supported the claim that when the escrow agreement was under consideration and before it was signed by plaintiff, the parties present tacitly agreed that the provisions of the trust then and theretofore in effect extended not only to the twenty-four shares of stock appearing upon the stock register of the corporation in the name of plaintiff but also to the shares issued in the name of defendant Albrecht. We do not so understand Mr. Graham's testimony.

He testified that Mr. Howard, the plaintiff, wished to have incorporated in the escrow agreement the trusts contained in the wills, and that Mr. George W. Joseph, who was then representing defendant Albrecht, objected.

The following is a statement made by Mr. Graham while testifying as a witness for plaintiff:

"The Witness: In the course of the discussion concerning this draft, which was submitted by Mr. Joseph, and, as I say, I can't recall whether Mr. Albrecht was there or not, Mr. Joseph said that in view of indebtedness that Mr. Howard owed in the middle west, he didn't care to have the trust tied into the escrow agreement for the reason that, while he considered it unlikely, possibly an attaching creditor could come in and acquire not only the 24 shares owned,—the 24 shares but the two escrowed shares, and in that manner have control of the company, with his client out. Mr. Howard was asked,—Mr. Howard stated that he had complete confidence in Mr. Albrecht, and the escrow agreement was signed in the form submitted with the exception of one or two very minor changes."

From the foregoing excerpt of Mr. Graham's testimony, it appears to us that the stock owned by plaintiff was deemed to be subject to possible attachment by plaintiff's creditors and that by making the two shares deposited in escrow subject to a trust in favor of plaintiff's wife at the instance of plaintiff those two shares also might be subjected to the attaching creditors' claims, and in that manner, even though Albrecht retained the twenty-four shares owned by him, he would lose control of the corporation because the attaching creditors would secure the twenty-four shares owned by plaintiff and the two shares in escrow giving them twenty-six shares or a majority of the fifty shares com-

prising all of the corporate stock. Moreover, the escrow agreement, as actually and finally executed, contained no reference to the trust referred to in plaintiff's wills.

The controlling question is whether by a preponderance of testimony plaintiff has established his version of the relationship existing between him and defendant Albrecht. We agree with the trial court that he has not. Defendant Albrecht does not ask for any affirmative relief, hence no good purpose could be served by determining whether in all respects, claimed by him, the testimony preponderates in his favor.

The decree of dismissal is affirmed. It is however ordered that neither party recover costs or disbursements on appeal.